IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION

U.S. BANKRUPTCY COURT
FILED
CAMDEN, NJ

2011 MAY 31  AM 11: 02

JAMES J. WALDRON

BY:_____
DEPUTY CLERK

| | |
|---|---|
| IN RE: | : |
| ANTONINO A. ARRIGO ROSEMARIE ARRIGO | : CASE NO. 11-22297-JHW |
| DEBTORS | : CHAPTER NO. 13 |
| ANTONINO A. ARRIGO ROSEMARIE ARRIGO | : Related to Doc. 12 |
| Movants | : |
| v. | : Hearing Date and Time: June 22, 2011 at 9:00 a.m. |
| | : Response Date: June 15, 2011 |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE | : |
| Respondent | : |

COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE'S
OBJECTION TO DEBTORS' MODIFIED CHAPTER 13 PLAN AND MOTIONS

NOW COMES, the Commonwealth of Pennsylvania, Department of Revenue ("Department"), by and through its Office of Chief Counsel and Senior Counsel Christos A. Katsaounis, and objects to the confirmation of the above-captioned Debtors' Modified Chapter 13 Plan ("Plan") as authorized by 11 U.S.C. § 1324 as follows:

1. This objection is made on the grounds that the Plan does not comply with the provisions of Chapter 13 and has not been proposed in good faith as required by 11

U.S.C. § 1325(a)(1) and (3) and in light of the Debtors' obligations pursuant to 11 U.S.C. § 1322(a)(2) to provide for full payment of all Department claims entitled to priority under 11 U.S.C. § 507 and pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) to provide for full payment of all Department claims entitled to secured status under 11 U.S.C. § 506.

2. The Debtors' Plan specifically fails to provide for full payment of the following debt:

a. The Department filed a Proof of Claim (Exhibit 1) for $3,787.56 (Exhibit 1): <u>Secured Claim</u> ($3,457.54) for Personal Income Tax ("PIT") for the 1998, 2003, 2004, 2005, and 2007 tax years (Exhibit 2); and <u>Unsecured Nonpriority Claim</u> ($330.02) for PIT for the 2006 tax year.

b. It is unclear how the Debtors intend to provide for the full payment of the Department's secured claim as the Plan does not provide for its payment. The Plan should provide for the full payment of the Department's secured claim along with accrued interest in the amount of three (3%) percent. It appears that the Debtors may be attempting to avoid the Department's tax liens.

c. A review of the Bankruptcy Schedules shows that the Debtors probably do not own any assets in Pennsylvania. If the Debtors, in fact, do not own any assets in

2

Pennsylvania, the Debtors should so provide in writing to the Department and the Department will amend its Proof of Claim accordingly after below matters are resolved.

3. The Department's Proof of Claim is not complete as the Debtors have not filed their PA PIT returns for the 2008, 2009, and 2010 tax years. (Exhibit 3)

   a. A review of the Debtors' PIT filings for the 2003, 2004, 2005, 2006, and 2007 tax years shows that the Debtors for everyone of these tax years reported "Net Profits" and "<u>Rents</u>, Royalties, Patents, Copyrights". It is reasonable to believe that the Debtors will have this income for the 2008, 2009, and 2010 tax years. (Exhibit 4a-4e) Once these delinquent PIT returns are filed, the tax liabilities will be characterized as an unsecured priority claim.

4. The Debtors have a number of unfiled Pennsylvania partnership returns, sales tax returns, employer withholding tax returns, and corporation tax reports for a number of entities in which they have an ownership interest. The filing of these tax returns is necessary to adequately determine the Debtors' PIT liabilities for the 2008, 2009, and 2010 returns. Also, because some of the nonfilings involve tax years for which the Debtors have filed PIT returns, these filings may affect the actual tax liabilities for those prior filed PIT tax years. Also,

because some of the nonfilings involve trust fund taxes (sales tax and employer withholding tax), the Debtors could have personal liabilities for these unfiled tax periods.

    a. <u>D'Angelo, Salvatore & Arrigo, Antonio.</u> At least in the prior tax years, the Debtor Antonio A. Arrigo had an ownership interest (50%) in the partnership D'Angelo, Salvatore & Arrigo, Antonio (EIN xx-xxx4432). The Department's records show that the partnership has not filed tax returns for the 2009 and 2010 tax years. (Exhibit 5) The Debtor should verify whether or not he still has an ownership interest in this partnership. If the Debtor does have an ownership interest, then these delinquent partnership returns must be filed.

    b. <u>Door Armax Inc.</u> The Department's records show that the Debtor Antonio Arrigo had an ownership interest in the PA S Corporation[1] Door Armax Inc. (EIN xx-xxx9463 and PA CT ID No. xxxx-051). (Exhibit 6) The Department's records show that Door Armax Inc. has not filed Corporation Tax ("CT") reports for the 1998 through the current tax years. (Exhibit 7)

The Department's records show that Door Armax Inc. has not filed Sales Tax ("ST") returns for the 01Q98 through

---

[1] A PA S Corporation is a pass through entity for Pennsylvania tax purposes. This means that the corporation's income is taxed at the individual level of its shareholders and not at the corporate level of the corporation.

04Q98 tax periods. (Exhibit 8) The ST account was opened on April 1, 1986 and closed effective December 31, 1998. (Exhibit 9) This means that ST returns are required to be filed for the 01Q98 through 04Q98 tax periods. Depending on whether ST was actually charged and collected, the Debtor could have a personal liability for any ST which was collected and not remitted. Also, the fact that the ST account was closed effective December 31, 1998, indicates that only the 1998 CT report has to be filed.

The Department's records show that Door Armax Inc. has not filed Employer Withholding Tax ("EWT") returns for the 01Q98 and 03Q98 tax periods. (Exhibit 10) The EWT account was opened on January 1, 1987 and closed effective September 30, 1998. (Exhibit 11) This means that EWT returns (Form W-3s, quarterly tax returns) are required to be filed for the 01Q98 and 03Q98 tax periods. The Form W-2 (annual reconciliation) which was filed for the 1998 calendar year shows that the corporation withheld $434.10 in the 1998 calendar year but only reported $197.34 withholding for the 02Q98 tax year. (Exhibit 12) The Debtor could have a personal liability for the income tax withheld from the employees which was not remitted. The fact that the EWT account was closed effective September

5

30, 1998, also indicates that only the 1998 CT report has to be filed.

    c.  <u>Boulder Stone Inc.</u>  The Debtor's Statement of Financial Affairs (Paragraph 18.) shows that the Debtor Antonio Arrigo had an ownership interest in the corporation Boulder Stone Inc. (EIN xx-xxx2643 and PA CT ID No. xxxx-285) from 2006 through 2007. The Department's records show that Boulder Stone Inc. has not filed CT reports for the 2006 through the current tax years. (Exhibit 13)

The Department's records show that Boulder Stone Inc. has not filed ST returns for the 02Q06 through 03Q09 tax periods. (Exhibit 14) The ST account was opened on April 1, 2006 and closed effective September 30, 2009. (Exhibit 15) This means that ST returns are required to be filed for the 02Q06 through 03Q09 tax periods. Depending on whether ST was actually charged and collected, the Debtor could have a personal liability for any ST which was collected and not remitted. Also, the fact that the ST account was closed effective September 30, 2009, indicates, at the minimum, that CT reports for the 2006 through 2009 tax years must be filed.

The Department's records show that Boulder Stone Inc. has not filed EWT returns for the 02Q06 through 03Q09 tax periods. (Exhibit 16) The EWT account was opened on April

1, 2006 and closed effective September 30, 2009. (Exhibit 17) This means that EWT returns (Form W-3s, quarterly tax returns) are required to be filed for the 02Q06 through 03Q09 tax periods. The Form W-2 (annual reconciliation) must also be filed for the 2006, 2007, 2008, and 2009 calendar years. The Debtor could have a personal liability for the income tax withheld from the employees which was not remitted. Also, the fact that the EWT account was closed effective September 30, 2009, indicates, at the minimum, that CT reports for the 2006 through 2009 tax years must be filed.

    d.   <u>Europa Fine Marble Granite & Limestone Inc.</u> The Debtor's Statement of Financial Affairs (Paragraph 18.) shows that the Debtor Antonio Arrigo had an ownership interest in the PA S Corporation Europa Fine Marble Granite & Limestone Inc. (EIN xx-xxx0533 and PA CT ID No. xxxx-833) from 2006 through 2007. The Department's records show that Europa Fine Marble Granite & Limestone Inc. was incorporated on April 3, 2003 and that it has not filed CT reports for the 2005 through the current tax years. (Exhibit 18) Six month extensions were filed for the 2005 and 2006 tax years which indicate that the corporation had business activities in PA which required the filing of CT reports. (Exhibit 18) The Department's records also show

that the 2003 and 2004 CT reports were filed on June 19, 2008. This Office requested that the review of those CT reports be expedited. (Exhibit 18)

The Department's records show that Europa Fine Marble Granite & Limestone Inc. does not have a PA ST account.

The Department's records show that Europa Fine Marble Granite & Limestone Inc. has not filed EWT returns for the 01Q07 through 03Q09 tax periods. (Exhibit 19) The EWT account was opened on April 1, 2003 and closed effective September 30, 2009. (Exhibit 20) This means that EWT returns (Form W-3s, quarterly tax returns) are required to be filed for the 01Q07 through 03Q09 tax periods. The Form W-2 (annual reconciliation) must also be filed for the 2007, 2008, and 2009 calendar years. The Debtor could have a personal liability for the income tax withheld from the employees which was not remitted. Also, the fact that the EWT account was closed effective September 30, 2009, indicates that CT reports for the 2005 through 2009 tax years must be filed. The EWT account shows that income tax was withheld from employees for the 2005 and 2006 calendar years which indicates the corporation had business activities for at the very least these tax years. (Exhibit 19) Further, the Debtor's admission in the Statement of Financial Affairs that he operated the business in 2006 and

8

2007 also indicates the corporation had business activities into 2007 tax year which would require the filing of CT reports.

Because income of Europa Fine Marble Granite & Limestone Inc. is taxable at the shareholder level, it is not known how the Debtors could have filed correct PIT returns for those tax years if these tax reports were not filed.

5. By letter dated May 9, 2011, the Department notified the Debtors' counsel of these tax filing delinquencies. (Exhibit 21)

6. Based on 11 U.S.C. §§ 1308 and 1325, this post-October 17, 2005, Chapter 13 proposed Plan may not be confirmed by this Court because of the Debtors' failure to file the pre-petition state tax returns referenced above, or to provide the Department with any evidence or documentation to support why these delinquent tax returns should not be filed.

7. The Plan also fails to provide specific language that the Debtors shall remain current on the filing of all post-petition/post-confirmation returns and payment of the post-petition/post-confirmation taxes. The Debtors are required by state tax law to keep current on the filing of

tax returns and payment of all tax obligations that come due post-petition and post-confirmation.

8. The Plan does not provide for any default remedies. Although Section 1322(b)(5) specifies that a plan is to provide adequate means for a plan's implementation such as provisions for curing any default, the Plan lacks such remedies. Lack of default remedies forces creditors into an untenable situation should the Debtors default on their Plan obligations. Without a proper default plan provision, tax claimants will be forced to pursue collection of plan defaults in the bankruptcy court. The purpose of post-confirmation jurisdiction is essentially and necessarily limited to protecting the order confirming the plan and preventing interference with the execution of the plan. Warren v. Catania Corp., 178 B.R. 279, 282 (Bankr.M.D.Fla. 1995); In re American Body Armor and Equipment, Inc., 172 B.R. 659, 662 (Bankr.M.D.Fla. 1994). Jurisdiction is limited to those matters which will in fact affect the administration of the plan. See In re Bankeast Corp., 142 B.R. 12 (Bankr.D.N.H. 1992)

A post-confirmation default should be treated as any other contractual default under state law. Instead of increasing the burden on a party in interest, the Plan should grant a party in interest clear and concise default

10

remedies in forums with concurrent jurisdiction. See 28 U.S.C. § 1334(b). Without adequate remedies, the Plan deprives the Department the ability to pursue plan defaults in non-bankruptcy forums.

Accordingly, the Plan should include an appropriate default provision in case the Debtors fail to comply with any provision in the Plan regarding its tax obligations. The Department submits that the Debtors' Plan should contain the following default provision:

> In the event of default by the Debtors of any of the provisions of the Plan concerning his tax obligations, after thirty days written notice of the default and failure of the Debtors to cure, the entire amount owed to the tax agency shall be immediately due and owing, and the tax agency may proceed with any remedies otherwise available to it under state law, including but not limited to usual state tax collection procedures, or under federal law, including but not limited to conversion or dismissal under 11 U.S.C. § 1112(b).

9. The Plan should provide that the discharge is to occur only upon the payment of all the claims as required under the Plan and as allowed under 11 U.S.C. § 1328.

10. The payments provided in the Plan may not be adequate to fund the Plan.

11. Because the Plan does not provide for the full payment of the Department's claim and the Debtors have a number of delinquent PA tax returns, the Debtors' Plan does

11

not adequately provide for the Department's claim. By providing for the full payment of the Department's claim and the filing of all the delinquent tax returns, this would assist the Court, the Trustee, the Debtors, and the other creditors in determining the viability of any proposed Plan.

WHEREFORE, the Department respectfully requests that the confirmation of the Debtors' Chapter 13 Plan be denied unless and until the Debtors submit a Plan which provides for the full payment of the Department's claim, for the Debtors to file all their delinquent PA tax returns for all their business entities and their PA personal income tax returns, for the Debtors to file and pay their post-petition and post-confirmation tax obligations, for default remedies in the Plan, and for discharge to occur only upon the completion of all the required Plan payments and as allowed by statute.

Respectfully submitted,

Date: May 26, 2011

*Christos A. Katsaounis*
Christos A. Katsaounis
Senior Counsel
PA Department of Revenue
Office of Chief Counsel
P.O. Box 281061
Harrisburg, PA 17128-1061
ckatsaouni@state.pa.us
Attorney ID No. 20196 (PA)
Telephone: (717) 346-4643
Facsimile: (717) 772-1459